UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HERBERT WILSON, ET AL. | CIVIL ACTION |
| VERSUS | NO. 05-6493 |
| THOMPSON/CENTER ARMS COMPANY, ET AL. | SECTION "N" |

## ORDER AND REASONS

Before the Court are the following motions: (1) Motion for Summary Judgment on Plaintiffs' Inadequate Warning Claim (Rec. Doc. No. 83) filed by Defendants Thompson/Center Arms Company, Inc. and Lexington Insurance Company;[1] (2) Defendants' Motion to Strike Plaintiffs' Expert P.A. Hancock (Rec. Doc. No. 73); and (3) Plaintiffs' Motion for Leave to Submit Rebuttal Reports (Rec. Doc. No. 76). For the reasons stated herein, the Court **DENIES** Defendant's Motion for Summary Judgment, **DENIES** Defendants' Motion to Strike Plaintiff's Expert, and **GRANTS** Plaintiff's Motion for Leave to Submit Rebuttal Reports.

### I. BACKGROUND

On November 12, 2004, Herbert "Sonny" Wilson ("Wilson") was using a Black Diamond muzzleloader rifle manufactured by Thompson/Center Arms Company ("Thompson") when, after

---

[1] Oral argument was held on the motion on May 23, 2007, at which time, the motion was granted as to Plaintiffs' defective design claim and taken under submission as to Plaintiff's inadequate warning claim.

firing the rifle, it backfired violently, resulting in the backward discharge of several metal projectiles, which struck Wilson's eye area, causing severe injuries. At some point prior to the accident, Wilson had installed a scope on the rifle. On the night before the accident, Wilson had disassembled, cleaned, and reassembled the rifle, using the boxend breech plug wrench ("boxend wrench") provided with the rifle to tighten the breech plug.

Plaintiffs filed suit against Defendants under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.*, asserting both defective design and inadequate warning claims.[2] According to Plaintiffs, the use of the boxend wrench to tighten the breech plug on the scoped rifle made it difficult for Wilson to achieve proper alignment of the breech plug threads with the barrel breech end threads, a condition referred to as cross-threading. Plaintiffs aver that the cross-threaded condition of the breech plug enabled Wilson to apply firm force to tighten the assembly without causing any stripping of the threads, thereby causing Wilson to believe the breech plug was properly inserted when it, in fact, was not. Plaintiffs contend that this improper assembly caused the rearward expulsion of the metal components of the rifle that struck Wilson's face and eye area. Plaintiffs further contend that use of the inline breech plug wrench ("inline wrench"), which is not included with the purchase of the rifle, would have prevented the incorrect assembly and Wilson's ensuing injuries. According to Plaintiffs, the tubular design of the inline wrench, which is sold by Thompson as an accessory part, makes it better-suited to achieving proper assembly of the breech plug to the barrel breech.

---

[2] Mr. Wilson's wife, Mindy Wilson, filed a loss of consortium claim.

Plaintiffs alleged that the failure of Thompson to provide the inline wrench with the purchase of the rifle constituted a defect in design. As set forth above, the motion for summary judgment was granted as to the defective design claim. Presently before the Court is the motion for summary judgment as to Plaintiffs' claims that Thompson failed to adequately warn of the dangers associated with cross-threading, improper installation of the breech plug, and use of the boxend wrench rather than the inline wrench to tighten the breech plug connection on a scoped rifle. It is to these arguments that the Court now turns.

## II. LAW AND ANALYSIS

### A. Legal Standard

#### 1. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (*citing Celotex*, 477 U.S. at 323). If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (*citing Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 (*citing Celotex*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (*quoting Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

## 2. LPLA

Under the LPLA, "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by claimant

or another person or entity." LA. REV. STAT. § 9:2800.54(A).  The claimant in a products liability action bears the burden of demonstrating that a particular product was unreasonably dangerous. *Id*. at § 9:2800.54(D).

A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. La. R.S. 9:2800.57(A).

To recover under the theory of inadequate warning, the plaintiff bears the burden of establishing that: (1) "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product;" and (2) that the failure to do so proximately caused the claimant's injuries. La. R.S. 9:2800.54 and .57; *Krummel v. Bombardier Corp.*, 206 F.3d 548, 557 (5th Cir.2000).

## 2. Analysis

### (a) Did the rifle possess a characteristic that may cause damage?

It is undisputed that at the time of the accident, the breech plug was improperly inserted. A breech plug wrench is a tool used to unscrew and to secure the breech plug from the barrel of the rifle. There are two types of breech plug wrenches at issue in this case. One, the boxend wrench, was included with the initial purchase of the rifle. The other, the inline wrench, was formerly supplied with the initial purchase of the rifle but subsequently became available only as an accessory

that could be purchased. Plaintiffs have attached as an exhibit a copy of the packaging of the inline wrench, which specifically admonishes the user to "screw [the] breech plug on carefully," making "certain that the threads mesh properly (not cross threaded) and ensure that the breech plug is snug." (Rec. Doc. No. 85-5, Ex. I). The warning on the packaging of this accessory part goes on to state that "improper type or installation of breech plugs can cause injury and/or death to the shooter or bystanders and damage to property."[3] *Id.* Accordingly, the Court finds that there is at least an issue of fact regarding whether the rifle possessed a characteristic, i.e., the potential for cross-threading or misalignment, that may cause damage.

**(b) Was Thompson required to provide an adequate warning of this characteristic?**

Defendants contend that they had no duty to warn because the fact that the breech plug was improperly installed was "open and obvious." Under Section 2800.57(B), a manufacturer's duty to warn does not extend to dangers that are or should be obvious or common knowledge to the ordinary user or handler of the product.[4] *See Ballam v. Seibels Bruce Ins. Co.*, 712 So.2d 543, 550 (La.App.

---

[3] Such a warning was not included in the owner's manual of the rifle.

[4] Section 2800.57(B) states:

> A manufacturer is not required to provide an adequate warning about his product when:
>
> (1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
>
> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

4 Cir. 1998); *Mallery v. International Harvester Co.*, 690 So.2d 765, 768 (La.App. 3 Cir. 1996). This rule "is particularly so when the user is familiar with the product, making him a 'sophisticated user.'" *Ballam*, 712 So.2d at 550 (citation omitted). "To be relieved of the duty to warn, the manufacturer need not show that the user had actual knowledge of the danger," but rather "need show only that the user should have known of the danger." *Mallery*, 690 So.2d at 768 (citations omitted).

In their memorandum in support of the motion for summary judgment, Defendants assert that "[p]laintiffs' expert Mr. Butters agrees that the improper installation of the breech plug would be obvious." (Rec. Doc. No. 83-4, p. 3). Defendants later state that "Mr. Butters admitted that in Mr. Wilson's case, the improper installation of the breech plug was obvious and a visual inspection would have alerted Mr. Wilson not to discharge the rifle." *Id.* at p. 18. Finally, Defendants represent that "[a]ll firearms experts in this matter agreed that the difference between a properly installed breech plug and this improper installation was obvious." *Id.* at pp. 20-21. After reading the deposition testimony of Mr. Butters and Mr. Hancock, the Court finds Defendants' characterizations of the experts' testimony to be inaccurate and somewhat misleading. What Mr. Butters actually stated was that it was obvious to *him* that the breech plug was misaligned.

> Q. I think that you told me that, when you tried to replicate the situation, it was obvious to you that the breech plug wasn't going in properly?
> . . .
> A. Yeah, I was intentionally inserting it in that way.

(Butters' Deposition, Rec. Doc. No. 83-14, p. 14.)

> Q. . . . [F]rom your endeavors with respect to putting the breech plug in in the same fashion, was it fair to say that you found that it was obviously not properly installed, when trying to replicate that?
>
> A. Well, I had obviously attempted to install it improperly, and see whether or not it could be done. . . .
>
> Q. . . . [W]hen you did that, you realized . . . that . . . there was something wrong; is that correct?
>
> . . .
>
> A. Because I was intending to do so. If I had not been intending to do that, and if that breech plug had stopped going in, in a way that it was intended to do, and it stopped in such a way as to give feedback in the form of an increased torque required to get it in, I might not have – if I were Mr. Wilson – caught onto the fact that it was not properly inserted. Mr. Wilson's impression was that it was appropriately inserted, because he experienced an increased insertion torque.

(Butters' Deposition, Rec. Doc. No. 83-15, p. 8.)

> Q. So by visually, when you tried to replicate his condition [misalignment], there was a visual difference in the full installation and the misaligned installation, as you called it?
>
> A. Yeah. Because my attention was drawn to it. I'd intentionally done that. I knew what it was going to be like.

(Butters' Deposition, Rec. Doc. No. 83-15, p. 9).

Moreover, Plaintiff's other expert, Dr. Peter Hancock, testified that the rifle provides inadequate visual and kinesthetic feedback to the user that the breech plug is misaligned. (Rec. Doc. No. 85-6, Ex. K, pp. 230-232). In light of this summary judgment evidence, while it is apparent that Mr. Wilson was certainly familiar with the rifle in question, the Court finds that it does not necessarily follow that the misalignment indicated by an improperly inserted breech plug was "open and obvious," such that Wilson should have noticed it. Thus, the Court finds that there exist genuine

issues of fact regarding what Wilson knew or should have known and whether the misalignment of the breech plug was "open and obvious."[5]

### (c)  Did Thompson fail to use reasonable care to provide an adequate warning of this characteristic and its danger?

Once it has been determined that the inherent danger is not obvious, and the consumer is not aware of or trained to detect that danger, then the warning, or lack thereof, must be scrutinized. *Clark v. Jesuit High School of New Orleans*, 572 So.2d 830 (La.App. 4 Cir. 1990), *writ denied*, 576 So.2d 48 (La. 1991).  The LPLA defines "adequate warning" as "a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." La. R.S. 9:2800.53(9).  Notably, this definition contains both a warning component and an instruction component. *Laird v. Deep Marine Technology, Inc.*, 2005 WL 22949, No. 03-2211, at *3 (E.D. La. 2005) (*citing Swope v. Columbia Chemicals Co.*, 281 F.3d 185, 207, n. 75 (5th Cir.2002).

> A striking element of the definition is that it equates warning and instruction. . . . The "warning" under the Act must both alert and instruct.  The conjunctive nature of the definition demands [that] the warning must both lead the ordinary user or handler to contemplate the danger in using the product (the warning component) and to either use it safely (the instruction component) or to decline to use it.

---

[5] As to whether Wilson should have known of the misalignment, Defendants aver that "it is further *undisputed* that this condition [the improperly installed breech plug] should have been obvious to the user of the rifle, requiring Mr. Wilson to not discharge the Black Diamond." (Memorandum, p. 20) (emphasis added).  However, not only is the "objective obviousness" of the misaligned condition not "undisputed," as Defendants state, but it is also one of the most vigorously contested issues in this litigation.

9

*Swope*, 281 F.3d at 207, n. 75, *quoting* Thomas C. Galligan, Jr., *The Louisiana Products Liability Act: Making Sense of It All*, 49 La. L.Rev. 629, 675-76 (1989).

Whether a particular warning was adequate is a question for the trier of fact. *Perez v. Michael Weinig, Inc.*, 2005 WL 1630018 (W.D. La. 2005); *Bloxom v. Bloxom*, 512 So.2d 839, 844 (La.1987); *Black v. Gorman-Rupp*, 655 So.2d 717 (La.App. 4 Cir.1995). In determining whether a warning is adequate, the trier of fact undergoes a balancing test, including the following considerations:

> (1) the severity of the danger; (2) the likelihood that the warning will catch the attention of those who will foreseeably use the product and convey the nature of the harm to them; (3) the intensity and the form of the warning, and (4) the cost of improving the strength or mode of the warning.

*Bloxom*, 512 So.2d at 844. Similarly, the Fifth Circuit has ruled that to be adequate, a warning must:

> (1) be properly worded to signify the intensity of the inherent danger in the product; (2) be properly placed on the product so that the consumer cannot avoid seeing it, and (3) convey to the consumer that <u>injury or damage can result</u> from a normal or intended use of the product.

*Hooker v. Super Products Corp.*, 751 So.2d 889, 905 (5th Cir.1999) (*citing Clark v. Jesuit High School of New Orleans*, 572 So.2d 830 (La.App. 4 Cir.1990), *writ denied*, 576 So.2d 48 (La.1991)).

Defendants cite *Jaeger v. Auto Cas. Ins. Co.*, 682 So.2d 292 (La.App. 4 Cir. 1996) for the proposition that "[a] product cannot be unreasonably dangerous where the product can be used safely if instructions are followed." (Rec. Doc. No. 83-4, p. 14). However, the Court finds that Defendants' reliance on *Jaeger* is misplaced. In *Jaeger*, the plaintiff's expert conceded that the warning in the manual was sufficient as it was written. The dispute regarding the warning in that case instead centered on the placement of the warning, not the substantive language of the warning.

The court's statement that "there was no evidence offered to establish that the seatbelt would not work as intended if the instructions in the owners manual were followed," was based on the court's finding (and the parties' agreement) that the language of the warning was sufficient, an issue that is hotly contested in this matter.  Thus, the logical flaw in Defendants' argument is that it begs the question, i.e., it requires one to assume away the precise matter in dispute herein..

Defendants further argue that the owner's manual provided proper instruction on how to install the breech plug, as well as a warning of cross-threading.  Plaintiff counters that the manual does not contain a warning that conveys to the customer that injury or damage can result, nor does it adequately instruct the user on the safe operation of the firearm, specifically, the proper installation of the breech plug.  The Court agrees with Plaintiff's assessment of the warnings and instructions contained in the owner's manual.

Page 27 of the owner's manual provides:

Note:  T/C's boxend wrench can only be used if your rifle has not been scoped, as you will need clearance when turning the wrench.  If you have scoped your rifle, it will be necessary to remove the striker and use the Deluxe In-Line Breech Plug Wrench which is sold as an accessory (T/C Part No.7766).

(Rec. Doc. No. 83-16, p. 27.)

The Court finds that the above language is not "properly worded to signify the intensity of the inherent danger" associated with use of the boxend wrench on a scoped rifle, nor does it in any way "convey to the consumer that injury or damage can result" from using the boxend wrench on a scoped rifle.  While the "it will be necessary" language arguably could be considered a warning, such "warning" at best suggests to the user that it will be difficult to achieve clearance when turning

11

the boxend wrench and makes no mention whatsoever of the danger and consequences, e.g. bodily harm, of using the boxend wrench.[6] Defendants argue that "there can be no claim that there was a failure to warn regarding the use of an in-line wrench" because the manual specifically recommended that the user purchase the inline wrench if the rifle was scoped. However, Defendants cite to no cases interpreting the LPLA that treat a "recommendation" as tantamount to an "adequate warning." Accordingly, the Court finds that there are genuine issues of fact with regard to whether Thompson provided an adequate warning as to the consequences of not purchasing the inline wrench once the rifle is scoped.

Regarding cross-threading, page 45 of the owner's manual merely advises the user to "[b]e careful not to crossthread the breech plug or overtighten it . . . ." Once again, the manual provides no information regarding the potential danger involved. In contrast, the packaging of the inline wrench contains following statement in bold print and capital letters: "Improper type or installation of breech plugs can cause injury and/or death to the shooter or bystanders and damage to property." (Rec. Doc. No. 85-5, Ex. I). Thus, the Court finds that genuine issues of fact exist as to whether Thompson provided an adequate warning regarding the dangers associated with cross-threading the breech plug.

The Court further finds that the owner's manual contains conflicting information that could conceivably cause the user to believe that he is in possession of not the boxend wrench, but rather the inline wrench. First, page 10 of the manual instructs the user to insert the "in-line muzzleloader

---

[6] As Plaintiffs point out, other warnings in the owner's manual are written in large red lettering and advise the user that failure to follow a particular instruction could result in serious injury or death.

breech plug wrench." Second, page 11 depicts an illustration of the inline wrench rather than the boxend wrench actually provided with the firearm. Third and most significantly, on page 45, the manual actually advises the user that the inline wrench is provided with the firearm. In light of these discrepancies in the manual, the Court finds that there is at least a genuine issue of fact on the issue of whether the manual as a whole adequately instructed the user regarding the type of breech plug wrench included with the rifle.

Notwithstanding the warnings and instructions contained in the owner's manual, the Court finds that a genuine issue of material fact remains as to whether Thompson provided adequate warning on the potential for cross-threading and the consequences of failure to purchase and use the inline wrench. The Court further finds that a genuine issue of material fact exists regarding whether Thompson provided adequate instruction on how to install the breech plug once the firearm was scoped.

### (d) Was the failure to provide an adequate warning the proximate cause of Wilson's injuries?

Under the LPLA, Plaintiffs must establish that the recoiling of the rifle and his ensuing injuries were proximately caused by Thompson's failure to warn about the risks associated with use of the boxend wrench, the danger of cross-threading and/or Thompson's failure to provide adequate instructions on installation of the breech plug. Proximate cause is "'any cause which, in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the result complained of and without which the result would not have occurred.'" *Graham v. Amoco Oil Co.*, 21 F.3d 643, 648 (5th Cir. 1994) (*quoting Sutton v. Duplessis*, 584 So.2d 362, 365 (La.Ct.App.1991)). Since

Plaintiffs bear the burden of establishing the element of proximate cause, Defendants may satisfy their burden here by merely pointing out that there is insufficient evidence in the record concerning this element. The burden then shifts to Plaintiffs to show by specific facts that a genuine issue exists. After careful consideration of the record herein, particularly the deposition testimony of Mr. Butters and Mr. Hancock, the Court finds that genuine issues of fact exist with regard to the issue of proximate cause.

In support of their argument that Wilson's negligence was the proximate cause of the accident, Defendants make the unsupported (and quite contested) assertion, without citation, that Plaintiffs' expert, "Mr. Butters states that Mr. Wilson's failure to properly use the rifle was the proximate cause of the incident." (Memorandum, p. 20) (emphasis in original). After carefully reading Butters' deposition, the Court finds that no such statement was made by Plaintiffs' expert.

In further support of their argument regarding proximate cause, Defendants reurge their contention that the improper installation of the breech plug was "open and obvious" and that Wilson "must have ignored the mark on the ramrod," which would have been a further indicator of the improperly installed breech plug. As discussed earlier, the Court has determined that there are issues of fact regarding what Wilson knew or should have known, i.e., whether the improperly installed breech plug was "open and obvious."

Plaintiffs have submitted the affidavit of Wilson, in which he states that "[h]e had no knowledge that an additional 'Deluxe In-Line Wrench' existed prior to November 12, 2004 and that "[h]ad he known that using the boxend breech wrench once the rifle was scoped could cause him injury, he would not have used the rifle until a more appropriate tool was found." Wilson also stated in his affidavit that "[h]ad he known that not purchasing the 'Deluxe In-Line Wrench' could have caused him injury, he would have purchased the tool." (Rec. Doc. No. 85-4.)

14

Defendants argue in their reply brief that Plaintiffs are attempting, via affidavit, to manufacture a dispute of fact to defeat the motion for summary judgment. However, the Court finds ample evidence in the record to support the assertions set forth in Wilson's affidavit. For example, as discussed earlier, pages 10, 11, and 45 of the manual seem (and thus might be found by a juror) both confusing and misleading, making it seem like the wrench included with the firearm is actually the inline wrench rather than the boxend wrench. In addition, the "warning" on page 27 of the manual does not mention the danger or consequences associated with use of the boxend wrench on a scoped rifle. Regarding cross-threading, page 45 merely tells the user to "[b]e careful not to crossthread," but again, mentions none of the consequences or danger involved. Finally, Hancock's deposition testimony indicates that the feedback mechanism to alert the user of whether the breech plug was situated properly was not sufficient. Overall, there is at least a genuine issue of fact as to whether the defendant's failure to warn of the full extent and severity of the potential danger was the cause of plaintiff's injury.

Defendant also argues that Wilson contributed to his own injury by failing to wear safety glasses as warned in the manual. Plaintiff responds that in this instance, the wearing of glasses could have made his injury even worse. The manual provides that protective glasses should be worn to protect the shooter from "airborne particles." The metal components of the firearm that struck Wilson's face and eye area are not "airborne particles." Thus, even if Mr. Wilson disregarded the warning admonishing him to wear protective glasses, the Court finds that this failure was not the proximate cause of his injuries.

15

Accordingly, the Court finds that Plaintiffs have submitted sufficient summary judgment evidence to enable their inadequate warning claim under the LPLA to survive summary judgment. The Court further finds that there are genuine issues of fact that preclude summary judgment on both Herbert Wilson's claim for lost wages and Mindy Wilson's claim for loss of consortium.

### III.  Defendants' Motion to Strike Plaintiffs' Expert P.A. Hancock

In support of this motion, Defendants argue that Plaintiffs have failed to file a complete report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[7] The Court finds that, contrary to Defendants' assertions, Hancock's report contains both a complete statement of his opinions and the basis of his opinions, and therefore satisfies the requirements of Rule 26(a)(2)(B). Accordingly, the Motion to Strike is **DENIED**.

---

[7] Rule 26(a)(2)(B) provides:
Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

### IV.  Plaintiffs' Motion for Leave to Submit Rebuttal Reports

Plaintiffs seek leave to submit rebuttal reports prepared by their experts, P.A. Hancock and John Butters, pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.[8] The Court finds that the reports of Hancock and Butters are limited to addressing the opinions set forth in Defendants' expert reports.  Because Plaintiffs sought to submit these reports within 30 days of receiving Defendants' expert reports, the submissions are therefore timely under Rule 26(a)(2)(C). Accordingly, Plaintiffs' motion is **GRANTED**.

### V.  CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)  Defendants' Motion for Summary Judgment on Plaintiffs' inadequate warning claim is **DENIED**;

(2) Defendants' Motion to Strike Plaintiffs' Expert is **DENIED**; and

(3) Plaintiffs' Motion for Leave to Submit Rebuttal Reports is **GRANTED**.

New Orleans, Louisiana, this  25th  day of September, 2007.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　**KURT D. ENGELHARDT**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**

---

[8] Rule 26(a)(2)(C) provides:
These disclosures shall be made at the times and in the sequence directed by the court.  In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party.  The parties shall supplement these disclosures when required under subdivision (e)(1).